UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

RICARDO COOPER,

                Plaintiff,          Civil Action No.: 13-14246
                                      Honorable Judith E. Levy
v.                                 Magistrate Judge Elizabeth A. Stafford

DANIEL HEYNS, *et al.*,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [35]

### I.    INTRODUCTION

Before the Court is defendants Michigan Department of Corrections ("MDOC") employees Michael Krafft and Frank Szostak's motion for summary judgment as to *pro se* plaintiff MDOC prisoner Ricardo Cooper's claims against them.  [35].  For the following reasons, the Court recommends that the motion be denied with respect to Cooper's Eighth Amendment claim against Szostak, but that it should be granted in all other respects.

### II.    BACKGROUND

Cooper alleges that Krafft and Szostak violated his First, Eighth and Fourteenth Amendment rights by removing him from his prison job in retaliation for him expressing public concern about and grieving food

sanitation conditions at the prison.  He sues Defendants in both their individual and official capacities.

According to Cooper, his facility was quarantined by the Center for Disease Control from August to October of 2012 due to an outbreak of E. coli that originated in the prison's food services operation.  In November 2012, as a food service employee, Cooper complained to food service director Szostak that allowing staff who handled large quantities of garbage to also serve food was unsanitary.  Szostak dismissed Cooper's complaint and said that he was too sensitive about sanitation.  Cooper filed a grievance, but was told that he needed to bring the issue up in the Warden's Forum.  Cooper followed those instructions, and Szostak was ordered in January 2013 to cease allowing staff who handled garbage to serve food.  According to Cooper, Szostak disregarded that order, so the prisoners continue to be fed contaminated food.

Szostak and Krafft claim that, on March 28, 2013, Szostak issued a directive to his staff to curtail unnecessary movement of food service inmate employees.  During this period, Cooper's job had been to deliver food from the 200 building (food service) to the 100 building (control center), for staff meals.  According to Cooper, he had been detouring on his return trip to the 700 building for the previous eleven months to pick up dirty

2

food trays to bring back to food service.  He claims that Krafft, the food service supervisor, was aware of these detours – a claim that Krafft denies.

On March 29, 2013, the day after Szostak issued his directive, Krafft observed Cooper detour to the 700 building and wrote Cooper an "out of place" misconduct ticket for violating the directive.  As a result, Cooper was immediately placed on "lay in" status, and his job was given to another inmate.  A misconduct investigation revealed that housing and control center staff had for eleven months routinely witnessed Cooper making the detours, but the investigator could not confirm that food service staff had authorized them.  On April 4, 2013, the hearing officer found Cooper not guilty of misconduct because Cooper believed his actions were authorized. [1, Pg ID 40].

Also on April 4, 2013, defendant Krafft completed a work performance evaluation stating that Cooper had disobeyed an order to return directly to food service after delivery of trays.  As a result, Cooper was to be placed on "30 days close supervision" and "moved to a different job area within food service."[1]  Cooper was issued another "lay in" period

---

[1] Cooper asserts that Krafft falsely represented on the evaluation that the he observed Cooper to be out of place on April 9, 2013, after the hearing investigator found him not guilty of misconduct.  However, the evaluation is dated April 4, 2013, and appears to refer to the March 29 incident. [1, Pg ID 52].

pending "classification changes" and then placed in a "utility" position of only one hour per week, whereas his previous employment had been approximately 40 hours per week.  Cooper was reinstated to his previous position on May 16, 2013, but he alleges that he has been overlooked for promotions in favor of newer employees in continued retaliation for his prior grievances and in violation of his right to equal protection.

Defendants Krafft and Szostak move for summary judgment, arguing that Cooper has failed to allege violations of any constitutional right and that, even if he had, Defendants are entitled to qualified immunity.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v.*

4

*CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  A fact is material if it could affect the outcome of the case based on the governing substantive law. *Liberty Lobby*, 477 U.S. at 248.  A dispute about a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV.   ANALYSIS

### A.   Eleventh Amendment

Although not addressed by Defendants,[2] to the extent Cooper seeks money damages from Defendants in their official capacities, his claims are barred by the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).

---

[2] Since Cooper is a prisoner proceeding *pro se*, his complaint or certain claims therein may be subject at any time to dismissal *sua sponte* if they are frivolous, fail to state a claim upon which relief can be granted, or attempt to sue a clearly immune defendant. 42 U.S.C. § 1997e(c).

## B.     First Amendment Retaliation

Cooper alleges that Defendants retaliated against him for grieving Szostak by writing a false misconduct ticket, generating a negative work report resulting in a suspension, and passing him over for promotions in favor of newer employees.  Retaliation against a prisoner in response to his or her exercise of a constitutional right violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).

In order to set forth a First Amendment retaliation claim, a prisoner must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Defendants concede that Cooper's filing of a grievance against Szostak constitutes protected conduct.  They argue, however, that the issuance of a minor misconduct ticket and the loss of a prison job do not constitute adverse actions.  To the contrary, even a minor misconduct ticket may constitute an "adverse action" that is sufficient to support a retaliation claim. *Campbell v. Gause*, No. 10-11371, 2011 U.S. Dist. LEXIS 21879, at *22-23, 2011 WL 825016, at *8 (E.D. Mich. Feb. 1, 2011) *adopted by* 2011 U.S. Dist. LEXIS 21865, 2011 WL 837737 (E.D. Mich. Mar. 4, 2011).  Unless the

claimed retaliatory action is truly inconsequential, "the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

Nonetheless, Cooper's retaliation claims fails because Defendants have put forth competent evidence in the form of affidavits that their actions were not motivated by Cooper's protected conduct.  Krafft states that he was not aware of Cooper's detours prior to Szostak's directive, nor of his grievance against Szostak.  His only reason for issuing a misconduct ticket against Cooper was his personal observation of the detour on March 29. [35-2, Pg ID 305].  Similarly, Szostak denies directing Krafft to write up Cooper or that he has no authority to do so, and he claims that Cooper's work classification and reassignment are solely in the hands of classification director Christopher LaBreck.  [35-3, Pg ID 309].  LaBreck confirms that he alone has authority to alter prisoner works assignments. [35-4, Pg ID 312-13].

Cooper offers no evidence to counter Defendants' denials; he has failed to set forth any evidence that his misconduct ticket, work duty reclassification and lack of promotions were retaliation for his complaints against Szostak.  Cooper exclusively relies on hearsay statements by other

8

inmates to support his claim that he was not promoted because he grieved

Szostak, and none of the declarants identify the source of their statements

that Szostak was blocking or could block Cooper from receiving a

promotion because of the prior grievances.  [1, Pg ID 23-24].  The hearsay

statements upon which Cooper relies have insufficient foundation to raise a

genuine dispute to support his retaliation claim.

Cooper's complaint appears to arise in part from his understandable

confusion about suffering work consequences for being out of place on

March 29 after he was found not guilty of class II misconduct.  Cooper does

not seem to appreciate that the hearing investigator found him not guilty of

misconduct despite being unable to confirm that he was authorized to make

the detours.  [1, Pg ID 40].  That explains why, when rejecting Cooper's

grievance of his continued work consequences, the warden opined that

Cooper's conduct violated work rules and deserved consequences even

though his actions did not rise to the level of MDOC misconduct.  [1, Pg ID

70].  Notably, Michigan law vests prison officials with complete discretion

regarding prisoner work assignments.  *Dobbins v. Craycraft*, 423 Fed.

Appx. 550, 552 (6th Cir. 2011).  Thus, MDOC had the right to reclassify

Cooper's work duty and deny him promotions based upon its finding that he

was out of place on March 29 even though he was not guilty of class II

misconduct.

For all of these reasons, Defendants' motion for summary judgment of Cooper's First Amendment retaliation claims should be granted.

## B. Eighth Amendment

Cooper alleges that Szostak's continued practice of allowing unsanitary food handling constitutes Eighth Amendment cruel and unusual punishment. "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citation and internal quotation marks omitted). Szostak points out that Cooper cannot sue for money damages because he does not claim to have suffered a physical injury. 42 U.S.C. § 1997e(e); *Richmond v. Settles*, 450 Fed. Appx. 448, 453 (6th Cir. 2011). But Cooper counters that he is seeking declaratory relief, not money damages. "Clearly, injunctive relief may be ordered by the courts when necessary to remedy prison conditions fostering unconstitutional threats of harm to inmates." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

Cooper has alleged sufficient facts to establish that declaratory relief may be warranted in order to remedy an unconstitutional threat of harm to

10

inmates.  It is true that Cooper did not suffer any injury from the previous E.
coli outbreak, and it has not been established that the alleged service of
food by prisoners who handle garbage actually caused that outbreak.
Nonetheless, Cooper alleges and Szostak does not dispute that the E. coli
outbreak occurred shortly before Cooper complained about the unsanitary
food handling, deeming a causal connection possible.  Further, Cooper
states that Szostak disregarded an order to stop allowing prisoners who
handle garbage to also serve food, and Szostak has not disputed those
claims.  Therefore, there is a genuine issue of material fact regarding
whether Cooper and other prisoners are being served food that poses an
immediate danger to health.

Qualified immunity insulates a government officials like Szostak only
for claims in their individual capacity and only from money damages.
*Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001); *Littlejohn v. Rose*,
768 F.2d 765, 772 (6th Cir. 1985).  Therefore, Cooper's claim for
declaratory relief against Szostak in both his individual and official
capacities should survive dismissal at this juncture.

### C.    Fourteenth Amendment

Cooper alleges that Defendants' work-related actions following his
out-of-place ticket violated his of Fourteenth Amendment rights of due

11

process and equal protection.  Neither claim should survive Defendants'

motion for summary judgment.

In order to state a claim for a violation of procedural due process, a

prisoner must first allege the existence of a protected liberty or property

interest.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  A prisoner has no

constitutionally protected property interest in prison employment because

the loss of such job does not impose an "'atypical and significant hardship .

. . in relation to the ordinary incidents of prison life.'"  *Dobbins,* 423 Fed.

Appx. at 552 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ivey v.*

*Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Cooper alleges that Defendants failed to follow MDOC policies and

procedures by replacing him prior to his misconduct hearing, failing to

reinstate him and failing to provide him with back pay upon a not guilty

finding.  However, even if true, the violation of internal policy and

procedures does not constitutionalize Defendants' actions.  *Umani v. Mich.*

*Dep't. of Corrections*, 432 Fed. Appx. 453, 461 n.5 (6th Cir. 2011) (*citing*

*Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007)).  Additionally,

Michigan law vests prison officials with complete discretion regarding

prisoner work assignments.  *Dobbins,* 423 Fed. Appx. at 552.  Therefore,

Cooper's due process claim fails.

His equal protection claim is equally without merit.[3]  Cooper does not allege discrimination based on his class status or the burden of a fundamental right.  As such, the Court interprets him as alleging a "class of one" theory: that he has been intentionally treated differently from other similarly situated prisoners without any rational basis for the difference in treatment.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 440-41 (6th Cir. 2012).  "To prevail, [Cooper] must demonstrate that the differential treatment [he was] subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [Defendants'] actions were irrational."  *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).

As previously described, MDOC maintains that Cooper deserved work consequences due to his violation of the out-of-place directive, and it is not the place of the Court to second-guess the propriety of such work-related decisions.  *Dobbins,* 423 Fed. Appx. at 552; *Umani v. Mich. Dep't. of Corrections*, 432 Fed. Appx. at 453.  Additionally, although Cooper names several inmates who have been promoted ahead of him, he does not demonstrate that these other inmates had similar negative work

---

[3] Defendants' motion does not address the equal protection claim. However, as noted above, Cooper's claims may be dismissed *sua sponte* if they fail to state a claim upon which relief.  42 U.S.C. § 1997e(c).

13

evaluations or suspensions.  *Trihealth,* 430 F.3d at  790 (disparate

treatment reasonably justified if person dissimilar in material respect).

Moreover, Cooper relies on hearsay statements that lack sufficient

foundation to support his claim that he was not promoted because he

grieved Szostak.  Because Cooper fails to allege specific admissible facts

that could lead a jury to find an equal protection violation, this claim should

be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING IN**

**PART AND DENYING IN PART** Defendants' motion for summary judgment

**[35]** resulting in judgment as a matter of law on Cooper's First and

Fourteenth Amendment due process claims, but not with regard to his

Eighth Amendment claim for declaratory relief against Szostak.  The Court

further **RECOMMENDS DISMISSING** *sua sponte* Cooper's Fourteenth

Amendment equal protection claim for failing to state a claim for relief.


Dated: February 3, 2015                    s/Elizabeth A. Stafford
Detroit, Michigan                          ELIZABETH A. STAFFORD
                                           United States Magistrate Judge

14

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P.

72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

15

**length and complexity to the objections**, but there is otherwise no page

limitation.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 3, 2015.

<div style="margin-left: 40%">

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

</div>