# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Ricardo Cooper,

                Plaintiff,         Case No. 13-cv-14246

                                   Hon. Judith E. Levy

v.                           Mag. Judge Elizabeth A. Stafford

Frank Szostak and Mike Krafft,

                Defendants.

_____/

## OPINION & ORDER ADOPTING IN PART AND REJECTING IN PART REPORT & RECOMMENDATION [39], GRANTING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS [42], GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [35], AND GRANTING PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL [54; 55]

Plaintiff Ricardo Cooper is a prisoner in the Saginaw Regional Correctional Facility (SRF) in Freeland, Michigan. On October 4, 2013, he filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging retaliation in violation of his First Amendment rights, violation of his Eighth Amendment right to be free from cruel and unusual punishment, and violation of his Fourteenth Amendment due process and equal protection rights. Of the original defendants in this case,

only Frank Szostak, food service director at SRF, and Mike Krafft, a food service supervisor at SRF, remain. Cooper alleges Szostak and Krafft violated his First and Fourteenth Amendment rights by removing Cooper from his food service job in retaliation for expressing public concern about and grieving food sanitation conditions at SRF. Cooper further alleges Szostak violated his Eighth Amendment rights by continuing to allow unsanitary food handling practices. Cooper sues Szostak and Krafft in both their individual and official capacities.

This matter is before the Court on Magistrate Judge Stafford's February 3, 2015 Report and Recommendation (Dkt. 39.) The Magistrate Judge recommends granting in part and denying in part defendants' motion for summary judgment (Dkt. 35). Specifically, the Magistrate Judge recommends granting defendants' motion as to Cooper's First Amendment retaliation and Fourteenth Amendment due process claims, dismissing *sua sponte* Cooper's Fourteenth Amendment equal protection claims, and denying defendants' motion as to Cooper's Eighth Amendment claim against Szostak.

Cooper has filed three objections to the Report and Recommendation. (Dkt. 42.) As set forth below, objections 1 and 2 will

be granted in part and overruled in part, and objection 3 will be overruled. The Report and Recommendation will be adopted in part and rejected in part, and defendants' motion will be granted as to the First Amendment retaliation claim against Krafft and Cooper's Fourteenth Amendment claims, and denied as to the First and Eighth Amendment claims against Szostak. Cooper's motion for appointment of counsel will be granted and this case will be referred to the Eastern District's *pro bono* committee.

## I.    Factual background

Cooper objects to the Magistrate Judge's account of the facts in this case, on the ground that it omits Cooper's allegation that he was not compensated for work hours he missed from March 29, 2013 to May 16, 2013 in violation of his First and Fourteenth Amendment rights. This objection is granted.[1] The factual background as otherwise set forth in the Magistrate Judge's Report and Recommendation is adopted here, with the addition of Cooper's allegation concerning the lack of compensation.

---

[1] Cooper also objects that the failure to compensate him for work hours missed was left out of the Magistrate Judge's account of the alleged adverse actions supporting Cooper's First Amendment retaliation claim. (Dkt. 42 at 2.) The alleged failure to compensate is included in the Court's analysis of Cooper's First Amendment claims in section II.A.

3

## II.   Standard of Review

District courts review *de novo* those portions of a report and recommendation to which a specific objection has been made. 28 U.S.C. § 636(b)(1)(C).  "*De novo* review in these circumstances entails at least a review of the evidence that faced the magistrate judge; the Court may not act solely on the basis of a report and recommendation." *Spooner v. Jackson*, 321 F. Supp. 2d 867, 868-69 (E.D. Mich. 2004).

Objections to the report must not be overly general, such as objections that dispute the correctness of the report and recommendation but fail to specify findings believed to be in error. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006); *see also Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

## III.   Analysis

### A.   First Amendment retaliation claims (Claims 1, 3, 4, and 7)

Cooper alleges that Szostak and Krafft violated his First Amendment right to petition the government by retaliating against him for filing grievances against Szostak.  Specifically, Cooper alleges Szostak retaliated against him by (1) failing to stop unsanitary food handling practices in the SRF food service, (2) refusing to compensate Cooper for the work hours he missed from March 29, 2013 to May 16, 2013, and (3) intimidating Szostak's subordinates to prevent Cooper from being promoted to a better food service position.[2]  (Dkt. 1 at 25-26,

---

[2] The Magistrate Judge found that Cooper also alleged defendants retaliated by "writing a false misconduct ticket."  (Dkt. 39 at 7.)  In fact, Cooper does not allege

29.)  Cooper alleges Krafft retaliated against him by writing a falsified one-hour-per-week work detail.  (Id. at 26.)

> The elements of a First Amendment retaliation claim are:
>
> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).   Once a plaintiff has met the burden of establishing the third element, the burden of production shifts to the defendant.   *Id.* at 399.   "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.*

The Magistrate Judge found that Cooper has met the first and second elements of his claim.  She found, however, that Cooper failed to produce evidence to counter defendants' evidence that their actions were not motivated by Cooper's protected conduct.  (Dkt. 39 at 8.)

---

this as a basis for his retaliation claims against Szostak and Krafft.  (See Dkt. 1 at 25-29.)

Specifically, the Magistrate Judge found that Cooper relied solely on hearsay statements to support his claim that he was not promoted in retaliation for grieving Szostak.   (Id. at 9.)   Cooper objects to this finding on the ground that he cannot secure affidavits from relevant witnesses without a lawyer, and he has moved for appointment of a lawyer for that reason.[3]

The Court adopts the Magistrate Judge's finding that Cooper was engaged in protective conduct.  Whether Cooper has produced evidence establishing the second and third elements of his retaliation claims against Szostak and Krafft requires further analysis, however, taking into consideration Cooper's objection regarding his ability to obtain witness affidavits.

### 1.   Szostak

Szostak's alleged failure to stop unsanitary food handling practices cannot serve as an adverse action supporting Cooper's retaliation claim, as Cooper has presented no evidence that action was directed at Cooper.

---

[3] The Magistrate Judge denied Cooper's motion and renewed motion for appointment of counsel (Dkt. 29; Dkt. 30) on February 3, 2015.  (Dkt. 40.)

Likewise, Szostak cannot be liable for retaliation based on his allegedly preventing Cooper from obtaining a promotion. In *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), the Sixth Circuit held that two prison food service supervisors who had instigated the termination of a prisoner from his commissary position were nonetheless not liable for retaliation, because they were not involved in the termination decision. Here, both Szostak SRF Classification Director Christopher LaBreck attest that LaBreck had exclusive authority to make decisions about Cooper's work detail. (Dkt. 35-3 at 3 ¶ 9; Dkt. 35-4 at 2 ¶ 3.) Cooper concedes this. (Dkt. 1 at 15 ¶ 25.) Cooper thus cannot sustain a retaliation claim against Szostak based on Cooper not being promoted. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (holding prison employee could not be liable for retaliation based on prisoner's transfer, where employee "was not the decisionmaker"); *Shehee*, 199 F.3d at 300.

As for Szostak's alleged refusal to compensate Cooper for the work he missed while suspended from his regular food service position, defendants do not dispute that Cooper was not paid back wages for missed work between March 29, 2013 and April 4, 2013. Nor do defendants produce evidence that Szostak lacked authority to make

8

decisions regarding payment or non-payment of wages to prisoners working in food service. Cooper objects that he could, with assistance of counsel, produce testimony from three former food service supervisors that Szostak paid back wages to other prisoners who returned to work after findings that they were not guilty of misconduct. (Dkt. 42 at 6.) Such evidence would support the second and third elements of Cooper's retaliation claim.

Even if Cooper can establish his retaliation claim on the basis of the unpaid wages, Szostak claims entitlement to qualified immunity, which would shield him from liability for money damages. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff bears the burden of proving that a defendant is not entitled to qualified immunity. *Gardenshire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "[V]iewing the facts in the light most favorable to plaintiff," the court "determine[s] whether the allegations give rise to a constitutional violation." *Shreve v. Franklin Cty.*, 743 F.3d 126, 134 (6th Cir. 2014). The court also must "assess whether the right [that was violated] was clearly established at the time of the incident." *Id.* A right is clearly established if its "contours" are "sufficiently clear such that a reasonable officer has fair

9

warning." *Baynes v. Cleland*, __ F.3d __, 2015 WL 5000615 (6th Cir. 2015).

As already noted, Cooper's ability to establish a constitutional violation depends on his access to testimony of the former food service supervisors. And it was clearly established in this Circuit in 2013 that retaliation against a prisoner for filing a non-frivolous grievance was unconstitutional. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Szostak is thus not entitled to qualified immunity, and summary judgment will be denied, on Cooper's retaliation claim, to the extent that claim is based on Szostak's alleged failure to pay Cooper's wages for the work Cooper missed from March 29, 2013 to April 4, 2013. Cooper's second objection will be granted as it pertains to his claim that Szostak retaliated against him by refusing to pay back wages, in violation of Cooper's First Amendment rights.

Cooper's second objection notes that he moved for appointment of counsel before the Report and Recommendation was issued. (See Dkt. 3; 29; 30.) The Magistrate Judge denied Cooper's motion and renewed motion for appointment of counsel on the same day she issued the

10

Report and Recommendation.   (Dkt. 40.)   As the Magistrate Judge noted,

> Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances.   In   determining   whether   "exceptional circumstances" exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved.

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993).

Cooper has again moved for appointment of counsel since the Report and Recommendation was issued.   (Dkt. 54, 55.)   The Court finds that Cooper cannot conduct discovery necessary to his retaliation claim against Szostak without assistance of counsel.   The Court thus finds Cooper's request for counsel appropriate under 28 U.S.C. § 1915(e)(1) and will refer the case to the Eastern District's *pro bono* committee.   *See Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (stating that "a plaintiff's inability to investigate crucial facts by virtue of his being a prisoner or of the remoteness of the prison from essential evidence is a familiar ground for regarding counsel as indispensable to the   effective   prosecution   of   the   case"   and   remanding   case   for

appointment of counsel under § 1915(e)(1), where plaintiff prisoner could not depose witnesses).

      2.   <u>Krafft</u>

Cooper alleges Krafft retaliated against him "by falsifying a one-hour-per-week work detail with no work duties."[4]  (Dkt. 1 at 14, 26.) Krafft allegedly created this false work detail on April 5, 2013.  (Id.)

Defendants have produced evidence that LaBreck, not Krafft, made the decision to place Cooper on the one-hour-per-week work detail.  While Krafft attests that he placed Cooper on the one hour work detail, he further attests that he did so "in accordance with the instruction given to me by the Classification Director and Defendant Szostak."  (Dkt. 35-2 at 3 ¶ 9.)  LaBreck attests that "[b]ased on the facts surrounding his misconduct ticket, I removed Plaintiff from his full time job assignment and placed him into a one hour a week utility position upon his return from lay-in notice."  (Dkt. 35-4 at 3 ¶ 6.)

---

[4] Cooper also claims in his response that Krafft wrote an April 9, 2013 work evaluation report falsely indicating that Cooper's March 29, 2013 misconduct ticket was issued on April 4, 2013.  (Dkt. 37 at 8.)  But the report is dated April 4, not April 9, 2013, and does not give the date of Cooper's misconduct ticket.  (Dkt. 1 at 52.)  Cooper alleges no other basis for characterizing the work evaluation as an adverse action.

Cooper points to exhibits F and G to his complaint as evidence that Krafft, not LaBreck, made the decision to place Cooper in the one-hour-per-week position.  Cooper claims that "Defendant Krafft was seen making and executing said decision."  (Dkt. 37 at 8.)  In his complaint, Cooper alleges a SRF corrections officer named Aldrich "had directly observed Defendant Krafft write Exhibit F" on April 5, 2013, and delivered Exhibit F to Cooper immediately after.  (Dkt. 1 at 15.)

Exhibit F, however, is not a work detail assignment.  Rather, Exhibit F is a MDOC lay-in notice dated April 5, 2013.  (Dkt. 1 at 42.) The notice informs the classification director that lay-in of Cooper was being requested "pending classification changes."  (Id.)  The notice is initialed "MK," alongside a stamp reading "per FSD Szostak."  (Id.) Exhibit F does not support Cooper's allegation that Krafft placed Cooper in the one-hour-per-week position.

For this reason, Cooper's objection regarding Aldrich's potential testimony is irrelevant.  Cooper objects that he could, with the assistance of a court-appointed attorney, produce Aldrich's testimony regarding the lay-in notice.  (Dkt. 42 at 6.)  But again, Cooper's claim against Krafft, as alleged, does not involve the lay-in notice.

13

Even if it did, Cooper has produced no evidence that the lay-in notice was motivated by his protected conduct. And defendants have produced evidence that the April 5, 2013 lay-in notice was in response to the conduct giving rise to Cooper's misconduct ticket, as well as a pending change in Cooper's work classification. (Dkt. 35-4 at 3 ¶¶ 5-6.)

Exhibit G does not support Cooper's claim either. Exhibit G consists of two daily schedules for Cooper, with effective dates of April 18, 2013, and May 9, 2013. (Id. at 44-45.) Each schedule indicates a one-hour Thursday food service work assignment. (Id.) But neither schedule is signed or otherwise indicates who created the schedule. Exhibit G is not evidence that <u>Krafft</u> changed Cooper's work detail – it is simply evidence that Cooper's work detail was changed.

In sum, Cooper has not produced evidence supporting the adverse action element of his retaliation claim against Krafft. Krafft is entitled to summary judgment on this claim.

## B.    Eighth Amendment claim (Claim 1)

Cooper alleges that Szostak failed to stop unsanitary food handling practices in the SRF food service, violating Cooper's Eighth Amendment right to be free from the danger posed by food prepared in

14

unsanitary conditions.  (Dkt. 1 at 25.)  Cooper seeks only declaratory relief on this claim.  (Dkt. 37 at 12.)

"Having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  A prisoner claiming that conditions of confinement constitute cruel and unusual punishment must show a serious "failure to protect from risk of harm" caused by a prison official acting with "deliberate indifference to inmate health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010).  In cases challenging conditions of confinement, the Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation," or other "conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it."  *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (internal quotation marks and citation omitted).

15

The Magistrate Judge found that Cooper has alleged sufficient facts in his verified complaint to create a genuine dispute of material fact regarding whether (1) Szostak disregarded a directive from the SRF Warden to stop allowing the same prisoners to handle garbage and serve food, and (2) Szostak thereby placed prisoners at risk of food-borne illness. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (noting that allegations in verified complaint "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment"). The Magistrate Judge accordingly recommended denying summary judgment on Cooper's Eighth Amendment claim.

Neither party objected to the Magistrate Judge's findings and recommendation. Cooper has thus established the deliberate indifference element of his claim for purposes of this motion.

Cooper has also produced sufficient evidence to establish that the food handling practices at SRF created a serious risk of harm to Cooper and other inmates. Cooper alleges in his verified complaint that he observed inmates assigned to the sanitation work detail in building 200 – the same building where SRF food services were located – collecting and disposing of garbage from all areas of food service operations;

16

cleaning and sanitizing restrooms, garbage cans, utility carts, and floors; and transporting supplies to food-handling workers. (Dkt. 1 at 7-8 ¶ 5.) Cooper further alleges he observed these same sanitation workers routinely being assigned to serving food and carrying uncovered food trays. (Id. at 9-10 ¶ 12.) Cooper also alleges that an outbreak of E. coli occurred in August 2012 – the same time period during which he observed sanitation workers handling food – and that the CDC determined the outbreak originated in SRF food services. (Id. at 8 ¶ 8.) This is sufficient evidence to create a genuine dispute of material fact as to whether the SRF food handling practices posed a serious risk to the health of inmates.

The Court will therefore adopt the Magistrate Judge's findings and recommendation, and deny summary judgment on Cooper's Eighth Amendment claim.

## C.   Fourteenth Amendment claims (Claims 1, 2, 3, 4, and 7)

Cooper alleges Szostak violated his Fourteenth Amendment right to due process of law by failing to resolve the food service sanitation issue. (Dkt. 1 at 25.) Cooper further alleges Szostak violated his Fourteenth Amendment due process and equal protection rights by (1)

terminating Cooper from his work detail before the misconduct hearing, (2) refusing to compensate Cooper for work hours missed between March 29, 2013, and May 16, 2013, and (3) intimidating subordinates to deprive Cooper of a promotion. (Dkt. 1 at 25-29.) Cooper alleges Krafft violated his due process and equal protection rights by (1) terminating Cooper from his work detail before the misconduct hearing, and (2) falsifying the one-hour-per-week work detail. (Dkt. 1 at 25-26.)

1.   Due process claims

To establish a violation of procedural due process under the Fourteenth Amendment, a plaintiff must show (1) the existence of a protected liberty or property interest, *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), and (2) that "the procedures attendant upon that deprivation" were constitutionally insufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).

Liberty interests can be created by the state or by the Constitution itself. *Bazzetta v. McGinnis,* 430 F.3d 795, 803 (6th Cir. 2005). The Constitution creates a liberty interest where a restraint on a prisoner "exceed[s] the [prisoner's] sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force."

18

*Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The state creates a liberty interest where its regulations "impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.*  Property interests "do not derive from the Constitution," but are created and defined by state law.  *Brock v. McWherter,* 94 F.3d 242, 244-245 (6th Cir.1996).  As with liberty interests, state regulations do not create protected property interests unless the loss of the relevant property imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Dobbins v. Craycraft,* 423 F. App'x 550, 552 (quoting *Sandin*, 515 U.S. at 484).

A prisoner does not have a cognizable liberty or property interest in prison employment under either the Fourteenth Amendment or Michigan law.  *Dobbins*, 423 F. App'x at 552 (noting that Michigan law "gives prison administrators complete discretion regarding prisoner work assignments").  Cooper's termination, lack of promotion, and changed work detail thus cannot support a due process claim.

That leaves Cooper's unpaid wages for the work he missed between March 29, 2013 and April 4, 2013.  Cooper argues in his objections that he has a protected property interest in those wages,

19

citing Mich. Comp. Laws §§ 408.481 and 800.332, and MDOC Policy Directive 05.01.100, "Prisoner Program Classification." (Dkt. 42 at 3, 8.)

Mich. Comp. Laws § 408.481 is the part of Michigan's Wages and Fringe Benefits Act concerning procedures for filing complaints for violations of the Act. Prisoners who work "entirely within the prison walls and for the benefit of the prison," as Cooper did, are employed under the terms of the Correctional Industries Act, Mich. Comp. Laws § 800.321-334. *Manville v. Bd. of Governors of Wayne State Univ.*, 85 Mich. App. 628, 635 (1978). Cooper cannot have a property interest in wages based on § 408.481.

Mich. Comp. Laws § 800.332, a provision of the Correctional Industries Act, gives MDOC the discretion to adopt a schedule of payments or allowances to inmates or their dependents from the correctional industries revolving fund. MDOC Policy Directive 05.01.100 at 4 ¶ DD provides that if a prisoner is found not guilty at an initial misconduct hearing, "s/he shall be paid for any time s/he was removed from the assignment pending the hearing." Although, as Cooper argues in his objection, the language in the policy directive is

20

non-discretionary, it is not the policy language that determines the existence of a property interest.   Rather, as the Sixth Circuit has suggested in *Pickelhaupt v. Jackson*, 364 F. App'x 221, 226 (6th Cir. 2010), whether state law or policy creates a property interest depends on "the nature of the deprivation."   (quoting *Cosco v. Uphoff*, 195 F.3d 1221, 1223-24 (10th Cir. 1999)).

In other words, the *Sandin* standard applies, and whether Cooper has a property interest in the wages depends on whether the loss of those wages imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.   Given that the Sixth Circuit has repeatedly held that prisoners do not have a property interest in a prison job created under state law, it is difficult to conclude that prisoners have a property interest in the wages for such jobs, particularly when those wages are for work that was not actually done.   *See Pickelhaupt*, 364 F. App'x at 226 (citing cases).

Even if Cooper had a property interest in the unpaid wages and could show the process by which he was deprived of those wages was constitutionally deficient, he would not be entitled to the wages, or any

21

other damages, from Szostak.  As the Magistrate Judge noted, the Eleventh Amendment bars Cooper's claims against the defendants in their official capacities, insofar as he seeks monetary damages.  (Dkt. 39 at 6 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).)  And Szostak would be entitled to qualified immunity on Cooper's due process claim, as it was not clearly established in 2013 that a prisoner in Michigan has a property interest in wages under MDOC Policy Directive 05.01.100.  *See Shreve v. Franklin Cty.*, 743 F.3d 126, 134 (6th Cir. 2014) (articulating qualified immunity standard).

In sum, Cooper has failed to establish a protected liberty or property interest as the basis for his due process claims.  Cooper's objection 1, to the extent that it treats this issue, and objection 3 will therefore be overruled, and defendants will be granted summary judgment on Cooper's due process claims.

### 2.   Equal protection claims

The Magistrate Judge interpreted Cooper as basing his equal protection claims on a "class of one" theory – that the defendants intentionally treated Cooper differently from other similarly-situated

22

prisoners, without any rational basis for doing so.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 440-41 (6th Cir. 2012).  The Magistrate Judge found Cooper failed to produce evidence of other similarly-situated prisoners who were treated differently from Cooper, and recommended dismissing Cooper's equal protection claims for that reason. (Dkt. 39 at 13-14.)

Cooper's only relevant objection is that, given the assistance of counsel, he could produce evidence that Szostak paid back wages to prisoners who returned to work following determinations that they were not guilty of misconduct.  (Dkt. 42 at 6.)  But Cooper himself admits that those prisoners "had not filed grievances against Defendant Szostak." (Id.) Without evidence of similarly-situated prisoners treated differently from Cooper, Cooper cannot sustain his equal protection claims.  The relevant portion of Cooper's second objection, regarding potential witness testimony regarding payment of back wages to other prisoners, will be overruled, and defendants will be granted summary judgment on Cooper's equal protection claims.

## IV.   Conclusion

Accordingly, the Magistrate Judge's Report & Recommendation (Dkt. 39) is ADOPTED IN PART and REJECTED IN PART, as set forth above;

Plaintiff's objection 1 is GRANTED, but only with respect to the Magistrate Judge's failure to include plaintiff's unpaid wage claim in the Report and Recommendation's factual background, and in the description of the factual basis for plaintiff's First Amendment retaliation claim, and is otherwise OVERRULED;

Plaintiff's objection 2 is GRANTED, but only with respect to witness testimony regarding his First Amendment retaliation claim based on defendant Szostak's alleged failure to pay back wages, and is otherwise OVERRULED;

Plaintiff's objection 3 is OVERRULED;

Defendants' motion for summary judgment (Dkt. 35) is GRANTED as to Cooper's First Amendment claim against defendant Krafft and his Fourteenth Amendment claims;

Defendants' motion for summary judgment is DENIED as to Cooper's First and Eighth Amendment claims against defendant Szostak; and

24

Plaintiff's motions for appointment of counsel (Dkt. 54, 55) are GRANTED; and

This case is referred to the Eastern District's *pro bono* committee for appointment of counsel.

IT IS SO ORDERED.

Dated: September 9, 2015      s/Judith E. Levy
Ann Arbor, Michigan      JUDITH E. LEVY
                    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 9, 2015.

      s/Felicia M. Moses
      FELICIA M. MOSES
      Case Manager